UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HESTER V. BRANT,

    Plaintiff,

vs.                                                                         Case No. 3:04-cv-1134-J-MCR

JO ANNE B. BARNHART, Commissioner of
Social Security,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits ("DIB") on February 12, 2001, alleging an inability to work since December 29, 2000 due to a latex allergy, asthma, epilepsy, and low back pain. (Tr. 45-47, 86) The Social Security Administration ("SSA") denied this application initially and on reconsideration. (Tr. 22-25). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on October 23, 2003. (Tr. 530-80). On April 5, 2004, the ALJ issued

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 12).

a decision finding Plaintiff was not disabled. (Tr. 13-21). Plaintiff filed a Request for Review by the Appeals Council, which was denied on September 2, 2004 (Tr. 5-9), thus making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed her Complaint in the U.S. District Court on October 22, 2004. (Doc. 1).

## II.  NATURE OF DISABILITY CLAIM

### A.  Basis of Claimed Disability

Plaintiff claims to be disabled since April 1, 2001[2], due to a latex allergy, asthma, epilepsy, and low back pain. (Tr. 45-47, 86).

### B.  Summary of Evidence Before the ALJ

Plaintiff was sixty-two years of age on the date the ALJ's decision was issued. (Tr. 45). She completed an eighth-grade education and testified she could read and write. (Tr. 92, 539-40). Plaintiff has past relevant work experience as a medical records clerk, telephone operator, file clerk, housekeeping cleaner and hospital cleaner. (Tr. 77-84). Plaintiff's medical history is discussed extensively in the ALJ's decision. By way of summary, Plaintiff testified she retired from her job with the VA Medical Center in 2000 because of her allergies. (Tr. 552-54). Plaintiff was diagnosed with an allergy to latex by her allergist, Dr. Adli Karadsheh. (Tr. 149). On December 6, 2000, Dr. Karadsheh wrote a letter to Plaintiff's employer, the VA Medical Center, opining that Plaintiff be placed on a full disability and that she be permitted an early retirement as a result of her allergies. (Tr. 374).

---

[2] At the hearing before the ALJ, Plaintiff amended her onset date from December 29, 2000 to April 1, 2001. (Tr. 538).

Plaintiff's treating physician, Dr. Theresa Burke, M.D., saw Plaintiff for a number of conditions including a seizure disorder, low back pain, leg pain and abdominal pain. Plaintiff's seizure disorder was controlled with medication. As for her low back pain, a magnetic resonance imaging ("MRI") on June 18, 1998 revealed "mild disc degenerative change and mild central canal stenosis at L3-L4 and a mild central stenosis at L4-L5." (Tr. 304). The MRI also detected moderate disc and endplate degenerative changes at L5-S1 and a diffuse bulge at L3-L4 without definite root compression. (Tr. 304). Another MRI of Plaintiff's lumbar spine was conducted on June 17, 2003. (Tr. 479). This MRI revealed mild degenerative disc changes most notable at L5-S1 and otherwise, was normal. Id.

On August 22, 2000, Plaintiff visited Dr. Burke complaining of persistent lower abdominal pain. (Tr. 220). Dr. Burke referred Plaintiff to a gastroenterologist, Dr. Dean Kramer, M.D. Dr. Kramer ordered a CT scan of Plaintiff's abdomen, which revealed "mild inflammatory changes in the right lower quadrant." (Tr. 317, 444). On October 27, 2001, Plaintiff underwent a colonoscopy, which was normal. (Tr. 395). On April 23, 2001, Plaintiff underwent a small bowel series. (Tr. 384). The series indicated a transit time that was slightly longer than average but still within the upper limits of normal. Id. A CT scan of Plaintiff's abdomen and pelvis was negative, revealing no inflammatory changes in the right lower quadrant. (Tr. 388). Dr. Kramer referred Plaintiff to another gastroenterologist, Dr. Alejandro Radi, for a second opinion. Dr. Radi recommended a repeat colonoscopy with a biopsy of the small bowel. (Tr. 391). The repeat

colonoscopy performed on July 25, 2001 was normal and the biopsy was "unremarkable."  (Tr. 424, 426).

Plaintiff returned to Dr. Kramer on March 4, 2002 with symptoms compatible with gastroesophageal reflux disease ("GERD") and Dr. Kramer started Plaintiff on an anti-reflux program with a prescription for Protonix.  (Tr. 446).  On April 30, 2002, Dr. Kramer noted that Plaintiff's reflux symptoms were "superbly controlled" so long as she took Protonix.  (Tr. 445).  Indeed, on February 12, 2003, Dr. Kramer noted that Plaintiff's abdominal cramping symptoms had been completely relieved.  (Tr. 454).

On May 19, 2003, Plaintiff saw Dr. Burke and complained of significant arthritis in her shoulders, back and hip.  (Tr. 482).  Dr. Burke referred Plaintiff to Dr. Selden Longley, M.D., at the Arthritis and Osteoporosis Center for further evaluation.  On May 5, 2003, Plaintiff was seen by Dr. Charles Shaw, M.D., for examination regarding her complaints of shoulder and knee pain.  (Tr. 496).  Dr. Shaw noted Plaintiff had full range of motion in her shoulder.  Id.  He detected two lesions consistent with lipomas and determined the tenderness in her right shoulder was due to degenerative arthritis.  Id.  Dr. Shaw also examined Plaintiff's knee and ordered an MRI of the knee.  Id.  On June 4, 2003, Plaintiff underwent an MRI of her left knee, which indicated mild degenerative changes of the patellofemoral joint.  (Tr. 477).  Dr. Shaw stated that Plaintiff did "not appear to have any pathology that would benefit from arthroscopy or arthroscopic surgery of her knee" and recommended only that Plaintiff be treated "in a conservative non-operative fashion at this point."  (Tr. 497).

Because Plaintiff took anti-seizure medication, she routinely underwent liver testing.  In 2002, one of her liver tests came back abnormal and Dr. Kramer opined that it was most likely the result of the medications Plaintiff was taking.  (Tr. 450).  A December 19, 2002 ultrasound of Plaintiff's abdomen revealed a normal liver but mild splenomegaly.  (Tr. 452).  On January 15, 2003, Plaintiff visited Dr. Burke who noted that Plaintiff had recently had a viral illness and the mild splenomegaly was consistent with such a viral infection.  (Tr. 441).

On May 16, 2001, non-examining physician, N.L. Kopitnik, D.O., completed a Physical Residual Functional Capacity ("RFC") Assessment of Plaintiff.  (Tr. 412-19).  Dr. Kopitnik determined Plaintiff was occasionally able to lift up to 50 pounds; frequently able to lift and/or carry 25 pounds; was able to stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday and to sit (with normal breaks) for a total of 6 hours in an 8-hour workday.  (Tr. 413).  He found Plaintiff was subject to no postural, manipulative, visual or communicative limitations.  (Tr. 414-16).  He determined Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation.  (Tr. 416).

On August 16, 2001, a second non-examining physician, Mary E. Sang, completed a Physical RFC Assessment.  (Tr. 427-34).  Dr. Sang determined Plaintiff was occasionally able to lift up to 20 pounds; frequently able to lift and/or carry 10 pounds; was able to stand and/or walk (with normal breaks) for a total of at least 6 hours in an 8-hour workday and to sit (with normal breaks) for a total of 6 hours in an 8-hour workday.  (Tr. 428).  It was also determined that Plaintiff could occasionally stoop,

kneel, crouch and crawl and was never to climb ladders/ropes/scaffolds.  (Tr. 429). Dr. Sang noted no manipulative, visual or communicative limitations but did find Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards (machinery, heights).  (Tr. 430-31).

### C.      **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion

through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Social Security Act and was insured for benefits up through the date of the decision. (Tr. 14, 20). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, April 1, 2001. Id. At step two, the ALJ determined Plaintiff had:

> a history of multiple allergies to latex, food, etc.; history of allergic rhinitis; history of mild degenerative joint disease of the lumbar spine; history of right-sided abdominal pain; history of seizure disorder, controlled; history of GERD; and history of mild degenerative joint disease in the left knee, right hand, and pelvis.

(Tr. 17, 20). The ALJ found these impairments "'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination [] one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." Id.

The ALJ found Plaintiff retained the residual functional capacity to:

> perform a reduced range of light work. She can, on a function by function basis, stand and/or walk 6 hours and sit 2 hours in an 8-hour workday. She can lift and/or carry 20 pounds occasionally and 10 pounds or less more frequently. She can occasionally bend, stoop, crouch, and crawl. She cannot kneel or climb. She must avoid all exposure to unprotected heights, working around dangerous moving machinery, working around concentrated atmospheric pollutants or working around latex.

(Tr. 19, 20). In making this determination, the ALJ determined that Plaintiff's testimony regarding her ability to work was not entirely credible. Id. At step four, the ALJ utilized

the testimony of a vocational expert (VE) during the hearing to determine if Plaintiff could perform any of her past relevant work. (Tr. 574-80). The VE testified Plaintiff could perform her past relevant work as a telephone operator and file clerk as those jobs are customarily performed in the national economy. (Tr. 19, 20). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. Id.

### III.   STANDARDS OF LAW

#### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991);

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## IV. ANALYSIS

Plaintiff argues several issues on appeal.  First, Plaintiff argues the ALJ erred by failing to consider the combination of her impairments at step two of the five-step analysis.  (Doc. 19, pp. 9-15).  Plaintiff also claims the ALJ presented the VE with an inaccurate hypothetical question and erred in finding Plaintiff could perform her past relevant work at step four in the sequential analysis.  (Doc. 19, pp. 15-18).  Finally, Plaintiff believes the ALJ failed to properly explain his reasons for finding her testimony not fully credible.  (Doc. 19, pp. 18-20).

The Court will address each of these arguments.

### A. **Whether the ALJ erred in failing to consider the combination of Plaintiff's impairments.**

Plaintiff's arguments with respect to this issue appear to be two-fold.  First, she appears to be arguing that the ALJ erred in failing to specifically find several of her alleged impairments to be severe at step two in his analysis.  Second, she claims the ALJ failed to consider the combination of her impairments in finding she did not meet any listing.  (Doc. 19, p.14).

At step two of the sequential analysis, the ALJ found Plaintiff had the following severe impairments: "a history of multiple allergies to latex, food, etc.; history of allergic

rhinitis; history of mild degenerative joint disease of the lumbar spine; history of right-sided abdominal pain; history of seizure disorder, controlled; history of GERD; and history of mild degenerative joint disease in the left knee, right hand, and pelvis."  (Tr. 17).  Plaintiff appears to take issue with the fact that the ALJ failed to include her right shoulder pain, arthritis, liver problems and breathing problems (including a diagnosis of COPD[3]) as severe impairments.  (Doc. 19, pp. 10-11).

At step two of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe.  By definition, this inquiry is a "threshold" inquiry.  It allows only claims based on the most trivial impairment to be rejected.  In this circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).  "At the second step . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities."  SSR 85-28.

As an initial matter, the undersigned finds Plaintiff's claims regarding her arthritis to be without merit.  The ALJ specifically found Plaintiff's history of mild degenerative joint disease of the left knee, right hand and pelvis to be a severe impairment at step two.  As for the remaining impairments: right shoulder pain, liver problems and COPD, Plaintiff has not alleged any specific limitations caused by these impairments.  In his decision, the ALJ referenced Plaintiff's right shoulder pain (Tr. 17) and liver problems

---

[3] Chronic Obstructive Pulmonary Disease

(Tr. 16). With respect to her right shoulder pain, Plaintiff refers to a progress note dated March 8, 1995 in which it was noted that Plaintiff was unable to lift her arm above the level of the shoulder. (Tr. 261). However, the ALJ referenced Plaintiff's May 5, 2003 visit to Dr. Shaw for pain in her right shoulder. (Tr. 17, 496). Dr. Shaw noted Plaintiff had full range of motion in her shoulder. (Tr. 496). He detected two lesions consistent with lipomas and determined the tenderness in her right shoulder was due to degenerative arthritis. Id. Dr. Shaw also examined Plaintiff's knee and ordered an MRI of the knee. Id. He did not order any further testing with respect to Plaintiff's shoulder. Accordingly, the more recent medical evidence supports the ALJ's finding that there was no limitation in Plaintiff's ability to move her right shoulder.

As for Plaintiff's liver problems, Plaintiff was subjected to various tests, however, never diagnosed with any liver disease. Back in June 1996, Dr. Dean Kramer, M.D., noted that although "[t]here ha[d] been a question raised in the past about possible 'liver disease,' [he had] no objective evidence to substantiate any liver disorder." (Tr. 332). On December 19, 2002, Plaintiff underwent an ultrasound of her liver, which indicated a normal liver. (Tr. 452). Accordingly, there is no evidence indicating Plaintiff's liver problems had any impact on her ability to work.

Finally, with respect to Plaintiff's diagnosis of COPD, there are several x-ray reports which note the presence of COPD (Tr. 117-119, 134, 137, 138), however, there are no records reflecting how this COPD affected Plaintiff and Plaintiff's testimony reveals no complaints regarding the COPD.

In sum, there is no evidence, including Plaintiff's testimony, that demonstrates the pain to her right shoulder, her liver problems or the COPD would be expected to interfere with Plaintiff's ability to work in any way. See McDaniel, 800 F.2d at 1031. Therefore, the undersigned finds the ALJ did not err by failing to find Plaintiff's right shoulder pain, liver problems and COPD were severe impairments.

Next, Plaintiff claims the ALJ failed to consider her impairments in combination in determining that she did not meet any listing. (Doc. 19, p.14). In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled. Id.; see also Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (it was clear the ALJ considered the claimant's impairments in combination where he stated that, ". . . based upon a thorough consideration of all evidence, the ALJ concludes that the appellant is not suffering from any impairment, or combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least 12 continuous months"); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (ALJ properly considered impairment in combination where he stated, ".

. . while Jones 'has severe residuals of an injury to the left heel and multiple surgeries on that area,' he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4").

In this case, the ALJ used language similar to that found acceptable in Jones and Wheeler.[4]  Additionally, the ALJ provided a comprehensive summary of the medical evidence.  On these facts, the undersigned finds the ALJ properly considered Plaintiff's impairments in combination.  See Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (determination that claimant did not have an impairment or combination of impairments that met or equaled the listing demonstrated that ALJ considered the combined effects of claimant's impairments).

### B. Whether the ALJ erred in posing an inaccurate hypothetical to the VE

Plaintiff argues the hypothetical posed to the VE did not accurately reflect all of Plaintiff's limitations.  The Plaintiff is correct that case law in this circuit requires the ALJ to employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant.  Pendley v. Heckler, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  Id. at 1561 (quoting Brenam v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)).

---

[4] Specifically, the ALJ found several of Plaintiff's impairments were "'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, **either singly or in combination** to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 17) (emphasis added).

In this case, the ALJ asked the VE whether a hypothetical claimant with Plaintiff's past relevant work experience, a limited eighth grade education, with the ability to read, write and speak the English language, do simple math, write a short note, compile a short grocery list, a valid driver's license with no restrictions and the ability to:

> stand and walk a total of six hours, sit for two hours, lift 20 pounds occasionally up to 1/3 of the workday, [] occasionally bend, stoop, crouch, crawl, do no kneeling and no climbing, no work at unprotected heights, no work around dangerous moving machinery, no work around concentrated amounts of atmospheric pollutants, such as dust, smoke, fumes, chemicals and no exposure to any latex-based products

could perform any of Plaintiff's past relevant work. (Tr. 578). Plaintiff believes the ALJ's hypothetical was inaccurate in that the lifting restrictions were not supported by substantial evidence and insofar as it failed to include reference to Plaintiff's lower right abdominal problem, her low back pain, right shoulder and left knee problems. (Doc. 19, pp.15-16).

As for Plaintiff's claim that the lifting restriction imposed by the ALJ is not supported by substantial evidence, Plaintiff only points to a record from 1997 when she complained of right shoulder pain. (Tr. 241). As noted in the previous section, more recent medical records revealed Plaintiff had full range of motion in her right shoulder as of May 2003. (Tr. 496). Additionally, there are no further records revealing any restrictions on Plaintiff's ability to lift. During the hearing, Plaintiff testified that Dr. Burke had subjected Plaintiff to a five pound lifting restriction but Plaintiff claimed to have no record of the restriction as she gave it to her boss and did not retain a copy. (Tr. 568).

Dr. Burke's records do not show such a restriction. Additionally, the more recent medical records do not support a five pound lifting restriction.

Instead, substantial evidence supports the ALJ's lifting restriction of twenty pounds occasionally up to one-third of the workday. Two non-examining physicians completed Physical Residual Functional Capacity forms for Plaintiff and found her capable of occasionally lifting fifty and twenty pounds and frequently lifting twenty-five and ten pounds. (Tr. 413, 428). Nowhere else in the record is there any indication of a lifting restriction for Plaintiff. Accordingly, the ALJ's lifting restriction is supported by substantial evidence.

As for Plaintiff's claims that the hypothetical failed to include reference to her low back pain, it appears the ALJ did consider her claims of low back pain. He found Plaintiff only able to sit for two hours (instead of the six hours found by the non-examining doctors). The ALJ did not find Plaintiff's claims regarding her low back pain entirely credible (a topic the Court will address further in section IV(D) of this Order). As the undersigned finds the ALJ appropriately found this testimony not fully credible, it was not error for the ALJ to assign a two hour sitting limit for Plaintiff and the Court finds it is supported by substantial evidence.

Plaintiff also believes the hypothetical should have reflected her lower right abdominal pain and left knee problems. However, Plaintiff does specify how the ALJ's hypothetical should have been amended. Indeed, Plaintiff has pointed to no evidence (either medical records or her own testimony) showing how her abdominal pain affected her ability to work and as noted above, Plaintiff's abdominal pain resolved itself after

Plaintiff began taking medication.  Accordingly, the ALJ was not obligated to include any reference to her abdominal pain in his hypothetical.

As for Plaintiff's left knee problems, again, Plaintiff's brief does not specify how the ALJ's hypothetical should have been amended to appropriately reflect this problem. The undersigned finds the hypothetical does accurately consider Plaintiff's left knee problems.  The hypothetical stated the claimant could do no kneeling or climbing and could only occasionally bend, stoop, crouch, or crawl.  No doctor ever found Plaintiff limited as a result of her left knee.  The only records regarding Plaintiff's left knee include an MRI on June 4, 2003 which revealed "mild reactive edema of the posterior aspect of the proximal tibia," "[m]ild degenerative changes involving the patellofemoral joint" and "[n]o evidence of grade three signal change."  (Tr. 494, 497).  Dr. Shaw noted Plaintiff did not appear to have any pathology that would benefit from arthroscopy or arthroscopic surgery of the knee.  (Tr. 497).  He recommended that she be treated in a "conservative non-operative fashion."  Id.  The ALJ's hypothetical is consistent with this evidence.  Accordingly, the undersigned find the hypothetical posed to the VE is supported by substantial evidence.

### C. **Whether the ALJ erred in finding Plaintiff could perform her past relevant work.**

Plaintiff also takes issue with the ALJ's finding that Plaintiff was able to perform her past relevant work as a File Clerk II and a telephone operator.  Specifically, Plaintiff claims she cannot perform the file clerk job because of her physical limitations on lifting, standing and moving her right shoulder.  (Doc. 19, pp. 17-18).  Additionally, Plaintiff claims her allergies would preclude her from working in this position as she would have

to work with other employees wearing perfume. (Doc. 19, p.18). As previously discussed, the undersigned finds the ALJ's hypothetical to be supported by substantial evidence and therefore, Plaintiff's claims regarding her lifting and standing restrictions are not well taken. As for Plaintiff's claims regarding moving her right shoulder, the Court has determined that the medical evidence does not support limitations on Plaintiff's right shoulder. Finally, Plaintiff's claim that she cannot perform this job because of her allergies is likewise without merit. There is nothing in the record substantiating this claim. Indeed, the medical records from Plaintiff's treating physician for her allergies indicate she was "doing well" with no asthma symptoms as of February 22, 2001. (Tr. 145). While there is a record noting that Plaintiff told her doctor she needed to leave the room when someone wore perfume (Tr. 151) and a note from Plaintiff's treating doctor stating that "[i]t would be best if she did not have artificial sprays or perfumes in her workplace" (Tr. 458), neither of these indicate Plaintiff cannot work with other people. Indeed, Plaintiff testified that she goes to church, an activity certainly exposing Plaintiff to people wearing perfume. (Tr. 567). Additionally, the letter from Dr. Karadsheh stating that Plaintiff should be placed on full disability and allowed to retire (Tr. 374) does not support a finding that Plaintiff cannot work around other people. The letter does not make it clear whether Plaintiff's problems were exposure to latex or other chemicals. Moreover, the hypothetical posed by the ALJ restricted Plaintiff from working around concentrated amounts of atmospheric pollutants, such as dust, smoke, fumes, and chemicals. Given this limitation, the VE testified she could perform the File Clerk II job. As it is Plaintiff's burden to show she is incapable of

performing her past relevant work and as Plaintiff has failed to do so, the undersigned does not believe the ALJ erred in finding that Plaintiff retained the residual functional capacity to perform the File Clerk II position.  Because the Court agrees with the ALJ that Plaintiff was capable of performing the File Clerk II position, it is not necessary to address Plaintiff's claims regarding the telephone operator position.

### D. **Whether the ALJ erred in rejecting Plaintiff's subjective complaints of pain**

Plaintiff claims the ALJ failed to properly explain his finding that Plaintiff's testimony regarding her pain and ability to work  was not credible.  (Doc. 19, pp. 18-20). Pain is a non-exertional impairment.  Foote, 67 F.3d at 1559.  The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an

individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

In this case, the ALJ did not specifically reference the Eleventh Circuit pain standard, however, it appears he conducted the correct analysis for pain and subjective complaints. Specifically, the ALJ found that Plaintiff had several severe impairments and noted that the objective medical evidence established Plaintiff had some pain and limitations but that they did not prevent her from performing work at all levels of exertion. (Tr. 18)

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones, 941 F.2d at 1532 (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Here, the ALJ provided specific reasons for his determination regarding Plaintiff's credibility. The ALJ referenced Plaintiff's degenerative arthritis in her pelvis, right hand and lumbar spine but found "these medical difficulties do not prevent her from performing some of her past relevant work." (Tr. 18). In making this finding, the ALJ noted that the various studies of Plaintiff's lumbar spine from 1998 and 2003 did not show any meaningful deterioration of Plaintiff's condition. Id.

In sum, the ALJ discussed Plaintiff's subjective complaints of pain and found that the medical evidence did not substantiate the severity of her complaints. As required, he articulated reasons for discounting Plaintiff's complaints. Accordingly, the ALJ's

decision regarding Plaintiff's credibility is consistent with the law and supported by substantial evidence.

## V.     CONCLUSION

For the foregoing reasons, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision.  Thereafter, the Clerk is directed to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, this  29th  day of March, 2006.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record